Roberto Luis Costales, Esq.
Louisiana Bar #33696
3801 Canal Street, Suite 207
New Orleans, LA 70119
Telephone: (504) 534-5005
Facsimile:  (504) 272-2956
*costaleslawoffice@gmail.com*

William H. Beaumont, Esq.
Louisiana Bar #33005
3801 Canal Street, Suite 207
New Orleans, LA 70119
Telephone: (504) 483-8008
*whbeaumont@gmail.com*

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT MAGEE Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>McDonald's Corporation,<br><br>        Defendant. | No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Scott Magee ("Plaintiff" or "Plaintiff Magee") alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief and the investigation by Plaintiff's counsel, which included, among other things, a review of public documents, marketing materials, and announcements made by McDonald's Corporation ("Defendant" or "McDonald's") as to all other matters. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This class action seeks to put an end to systemic civil rights violations committed by McDonald's against blind persons in the United States. McDonald's is denying blind individuals equal access to the goods and services they provide during "late-night" hours at thousands of their restaurants throughout the United States.

2.      In an effort to increase profits and make their products more available to the public for longer periods of time, McDonalds offers "late night" hours. During these late evening and early morning operating times, patrons are not allowed to physically enter McDonald's restaurants and McDonald's only offers its products and services via "drive-thru" windows attached to its restaurants. The drive-thru is the exclusive means by which a customer can purchase McDonald's products.

3.      Despite being accessible to the general public McDonald's drive-thrus lack any meaningful accommodation for the blind. Because McDonald's does not permit pedestrians to order from its drive-thru windows, the blind are totally precluded from accessing Defendant's products during late night hours.

4.      While McDonald's sighted customers can independently browse, select, and pay for products at Defendant's drive-thrus without the assistance of others, blind people must hope for a companion with a car or paid taxi services to assist them in selecting and purchasing McDonald's food.  This lack of accessibility to the blind is particularly offensive given the sophistication and size of McDonald's Corporation as well as the advanced technological society in which we live today.

5.      By failing to make its restaurants accessible to blind persons, McDonald's is violating basic equal access requirements under federal law.  Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by drive thru restaurants and other public accommodations that are inaccessible to blind and visually impaired persons.

## JURISDICTION

6.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiffs' claims arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*

## VENUE

7.      Venue is proper in the Northern District pursuant to 28 U.S.C. §§ 1391 (b)-(c).

8.      Defendant McDonald's owns, operates, and leases thousands of restaurants in Illinois, including several hundred in the Northern District of Illinois. Defendants are committing the acts alleged herein in the Northern District of Illinois.  A substantial part of the acts and omissions giving rise to Plaintiff's claims have occurred in the Northern District of Illinois.

Defendant is a corporation based in this District and it dictates the discriminatory policies that are the subject of this lawsuit while located in this District.

## PARTIES

9.      Plaintiff Scott Magee is a citizen of Louisiana and resident of Metairie, Louisiana. Plaintiff Magee's eyesight has been compromised by a condition known as macular degeneration. This condition renders him legally blind and as such he is a member of a protected class under the Americans with Disabilities Act. Plaintiff uses the terms "blind person" or "blind people" and "the blind" to refer to all persons with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

10.      Defendant McDonald's is an Oak Brook, Illinois-based, for-profit corporation organized under the laws of the State of Delaware. Defendant owns, operates and/or leases restaurant buildings at tens of thousands of locations throughout the United States. Plaintiffs seek full and equal access to the accommodations, advantages, facilities, privileges, and services provided by Defendant's restaurant buildings throughout the United States.

## FACTUAL ALLEGATIONS

11.      Plaintiff incorporates all of the preceding paragraphs.

12.      Defendant McDonald's is one of the largest and most well-known "fast food" restaurant chains in the world. It boasts over fourteen thousand restaurants in the United States and characterizes itself as "the world's leading global food service retailer."[1]

13.      Some of Defendant's restaurants are operated by the Defendant, others are operated by franchisees.

---

[1] http://www.aboutmcdonalds.com/mcd/investors/company_profile.html (last accessed May 25th, 2016)

14.     Even if a particular McDonald's restaurant is operated by a franchisee, Defendant McDonald's Corporation leases and/or owns the restaurant building itself.

15.     McDonald's restaurants offer two kinds of service: counter service and drive thru service.

16.     Counter service is available to patrons who physically enter McDonald's restaurants. Patrons approach a sales counter and relay their orders to McDonald's representatives who process payment and serve the food.

17.     Counter service is not available to McDonald's customers when a restaurant is closed, or "after hours," or any other time during which a particular McDonald's restaurant does not make its interior accessible to the public.

18.     McDonald's restaurants also provide drive-thru service. Drive thru service is provided via specialized automobile driveway lanes which stretch around Defendant's restaurants.   In order to obtain drive-thru service McDonald's customers maneuver their automobiles into the drive-thru lane and then relay their food order to a McDonald's representative via microphone.  Customers then drive their car further along the lane and retrieve their food from a series of windows on the side of Defendant's restaurants.

19.     Unlike counter service, McDonald's drive-thru service is available to customers during periods of time when the interior of a given McDonald's restaurant is closed to the public.

20.     McDonald's has been using drive-thrus since 1975.[2]  Drive-thrus are specifically utilized by the Defendant to maximize the accessibility of their products to customers and thus drive profit margins.

---

[2] http://www.mcdonalds.com/us/en/our_story/our_history.html (last accessed May 25, 2016)

21.     One of the hallmarks of McDonald's success has been its adaptability.  In 2015 alone, McDonald's changed the length of time it toasts its buns,[3] changed the manner in which it sears its hamburger patties,[4] switched from margarine to butter in the preparation of its signature breakfast dish, the Egg McMuffin,[5] introduced three all new sandwiches (buttermilk chicken,[6] artisan grilled chicken,[7] and sirloin burger[8]), as well as an interactive "customizable burger" option.[9] It also transitioned to "cage free" eggs[10], and chicken that is free from antibiotics "important to human medicine"[11] and, to the awe of McDonald's aficionados everywhere, opened up the breakfast menu for all day service.[12]  Each of these changes is accompanied by in-

---

[3] http://fortune.com/2015/05/27/mcdonalds-toasted-bun/

[4] http://fortune.com/2015/05/27/mcdonalds-toasted-bun/

[5] http://news.mcdonalds.com/Corporate/news-stories/2013/McDonalds-to-Fully-Transition-to-Cage-Free-Eggs

[6] http://news.mcdonalds.com/Corporate/news-stories/2013/McDonalds-to-Fully-Transition-to-Cage-Free-Eggs

[7] http://news.mcdonalds.com/Corporate/news-stories/2013/McDonalds-to-Fully-Transition-to-Cage-Free-Eggs

[8] http://bigstory.ap.org/article/d9ca93e5160a4882aec6759bdf649cbf/mcdonalds-roll-out-bigger-burgers

[9] http://www.reuters.com/article/2015/04/29/us-mcdonalds-burger-custom-idUSKBN0NK1YQ20150429

[10] http://news.mcdonalds.com/Corporate/news-stories/2013/McDonalds-to-Fully-Transition-to-Cage-Free-Eggs

[11] http://news.mcdonalds.com/Corporate/news-stories/2013/McDonalds-to-Fully-Transition-to-Cage-Free-Eggs

[12] http://seekingalpha.com/article/3595666-mcdonalds-mcd-ceo-steve-easterbrook-on-q3-2015-results-earnings-call-transcript?page=2

depth market studies checking their efficacy and profitability, including a "customer feedback system" which tracks over 10 million customer observations every year.[13]

22.     McDonald's history of adapting to increase profits can also be seen in its drive-thrus.  As recently as the spring of 2015, Defendant improved the speed of its drive-thrus by simplifying and reducing the drive-thru menu to include only the most profitable and easily-prepared food items[14] and also implemented new operational procedures and training regimens to ensure the accuracy of orders placed at its drive-thrus.[15] McDonald's also continues to incorporate double-laned drive-thrus, to make its products more accessible to customers.[16]

23.     All of McDonald's precision calibrations and shrewd business planning is consummate with its status as an international business monolith.  Curiously absent, however, from McDonald's continued adaptation, is any concern whatsoever for the accessibility of their late night drive-thrus to the disabled.

24.     Despite the fact that Defendant's self-proclaimed vision is " to become a modern, progressive burger company delivering a contemporary customer experience"[17] the blind are totally unable to access any of Defendant's products or services at late night, drive-thru restaurants.

---

[13] http://seekingalpha.com/article/3595666-mcdonalds-mcd-ceo-steve-easterbrook-on-q3-2015-results-earnings-call-transcript?page=2

[14] http://seekingalpha.com/article/3352105-mcdonalds-mcd-ceo-steve-easterbrook-on-q2-2015-results-earnings-call-transcript?page=3

[15] http://seekingalpha.com/article/3352105-mcdonalds-mcd-ceo-steve-easterbrook-on-q2-2015-results-earnings-call-transcript?page=3

[16] http://seekingalpha.com/article/3352105-mcdonalds-mcd-ceo-steve-easterbrook-on-q2-2015-results-earnings-call-transcript?page=3

[17] http://www.aboutmcdonalds.com/mcd/investors/company_profile.html

**The Blind and Late Night Drive-Thru**

25.     Many thousands of McDonald's restaurants remain open until very late in the evening and early morning, serving food via the drive-thru. Late-night service is available exclusively through the drive-thru and customers are not permitted to physically enter the McDonald's to order food.

26.     The blind are unable to access McDonald's late night drive-thru service.

27.     McDonald's specifically prohibits pedestrians from walking up to the drive-thru windows and ordering food.

28.     McDonald's company policy is to refuse service to any pedestrian who walks up to the drive-thru attempting to order food.

29.     McDonald's restaurants that are open late night via the drive-thru window do not offer any means for pedestrians to order food.

30.     The blind are unable to drive, and so they are unable to navigate a car into the drive-thru.

31.     Because the blind are unable to drive or walk up to the drive-thru window, and because McDonald's interiors are closed during late night operating times, the blind are totally barred from independently using or enjoying the goods and services provided by McDonald's late night drive-thru restaurants.

32.     There are a variety of modest accommodations Defendant could make that would allow blind people to access to McDonald's late night restaurant services. However McDonald's does not employ any such policy or practice.

**Mr. Magee's Experience**

33.     Plaintiff Magee encountered one of Defendant's restaurants near his home in Metairie, Louisiana during McDonald's late-night hours in August of 2015.

34.     Mr. Magee has visited this particular McDonald's restaurant multiple times before and he reasonably expects to visit there again in the future.

35.     On the date in question, Mr. Magee approached the McDonald's restaurant and attempted to enter its interior for the purpose of purchasing goods and services.  However, the lobby doors were locked and Mr. Magee was unable to enter.

36.     Although the restaurant interior was closed, Mr. Magee knew from past experience and personal observation that McDonald's was continuing to serve food via its drive-thru.

37.     Mr. Magee then attempted to walk up to the drive-thru.

38.     The McDonald's personnel therein refused service to him, laughed, and told him to go away.

39.     Mr. Magee felt ashamed of his inability to access the McDonald's services.

40.     Mr. Magee has suffered this experience at other McDonald's restaurants in the past.  Mr. Magee has never been able to independently access any of McDonald's late-night drive-thrus at various locations.

41.     Defendant thus provides accommodations, advantages, facilities, privileges, and services to customers that contain access barriers. These barriers deny full and equal access to Plaintiff, who would otherwise be able to fully and equally enjoy the benefits and services of McDonald's restaurants.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff seeks certification of the following Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2):

> **"all legally blind individuals who have been and/or are being**
>
> **denied access to McDonald's late night restaurant services in**
>
> **the United States."**

43.      The persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

44.     This case arises out of Defendant's common policy and practice of denying blind persons access to the goods and services of its restaurants.  Due to Defendant's policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to McDonald's restaurants and the goods and services they offer.

45.     There are common questions of law and fact involved affecting the parties to be represented in that they all are legally blind and have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of the accommodations, advantages, facilities, privileges, and services provided at Defendant's restaurants due to the lack of accessible features at such facilities, as required by law for persons with disabilities.

46.     The claims of the named Plaintiff are typical of those of the class.  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained and are represented by counsel competent and experienced in complex and class action litigation.

47.     Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

48.     References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## FIRST CAUSE OF ACTION

**(Violation of 42 U.S.C. §§ 12181, *et seq.* - Title III of the Americans with Disabilities Act)**
**(on behalf of Plaintiff and the Class)**

49.     Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein.

50.     Section 12182(a) of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.,* (hereinafter "ADA") provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

51.     Title III goes further in defining the specific types of discrimination that places of public accommodation are prohibited from doing.  This includes the:

> failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, services, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

52.     As discussed in *Factual Allegations* above, McDonald's is a monolithic international conglomerate that is more than capable of adapting its policies and practices to accommodate the blind and the complaints made herein. However, McDonald's chooses not to

allow their late night drive-thru restaurants made independently usable by customers who are blind or have low vision. Consequently, McDonald's must furnish auxiliary aids or services that enable such individuals to equally and independently benefit from this payment option unless doing so would result in a fundamental alteration or undue burden. *See* 28 C.F.R. §§ 36.303(a),(c)(1).

**McDonald's restaurants are public accommodations**

53.    McDonald's restaurants are restaurants, and, therefore places of public accommodation with the definition of Title III of the ADA. 42 U.S.C. §§12181(7)(B)

54.    McDonald's restaurants are sales establishments, and, therefore places of public accommodation with the definition of Title III of the ADA. 42 U.S.C. §§12181(7)(E)

55.    Defendant's restaurants are places of "public accommodation" that are subject to compliance with the ADA.

56.    Under Section 12182(a) and (b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

57.    Under Section 12182(a) and (b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, which is equal to the opportunities afforded to other individuals.

58.    Under Section 12182(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: a failure to make reasonable modifications in policies, practices, or

procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

59.     Patrons of Defendant's restaurants who are blind (including the Plaintiff and the Plaintiff Class) have been denied full and equal access to those public accommodations; and they have not been provided services that are provided to other patrons who are not disabled and/or they have been provided services that are inferior to the services provided to non-disabled patrons.  Defendants have failed to take any steps to remedy their discriminatory conduct.  These violations are ongoing.  Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and members of the class will continue to suffer irreparable harm.

60.     The acts alleged herein constitute violations of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.,* and the regulations promulgated thereunder.

61.     The actions of Defendant were and are in violation of the Americans with Disabilities Act 42 U.S.C. §§ 12181, *et seq.,* and therefore Plaintiff is entitled to injunctive relief to remedy the discrimination as well as attorney's fees.

## SECOND CAUSE OF ACTION

**(Declaratory Relief)**
**(on behalf of Plaintiff and the Class)**

62.     Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein.

63.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and that Defendant denies, that Defendant, by providing inaccessible glass front vending machines throughout the United States, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*

64.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**WHEREFORE**, Pursuant to 42 U.S.C. §§ 12181, *et seq.* and the remedies, procedures, and rights set forth and incorporated therein Plaintiffs request relief as set forth below.

## RELIEF REQUESTED

Plaintiff prays for a judgment as follows:

1.  A permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*;

2.  A permanent injunction requiring Defendant to take the necessary steps to make McDonald's late night drive-thru restaurants that are provided throughout the United States readily accessible and usable by blind and visually impaired individuals;

3.  A declaration that Defendant is owning, maintaining and/or operating its restaurants in a manner which discriminates against the blind and visually impaired and which

fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*

4. An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and appointing Plaintiff as Class Representative and his attorneys as Class Counsel;

5. Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by law;

6. Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand trial by jury on all issues for which a jury trial is allowed.

May 26, 2016

Respectfully submitted,

*/s/ Roberto Luis Costales*
_____
Roberto Luis Costales
3801 Canal Street, Suite 207
New Orleans, LA 70119
Louisiana Bar #33696
Telephone: (504) 914-1048
Facsimile: (504) 272-2956
*costaleslawoffice@gmail.com*

*/s/ William H. Beaumont*
_____
William H. Beaumont
3801 Canal Street, Suite 207
New Orleans, LA 70119
Louisiana Bar #33005
Telephone: (504) 483-8008
*whbeaumont@gmail.com*

*Attorneys for Plaintiff*