# EXHIBIT G

## OPERATOR'S LEASE

[CITY, STATE]  
[Address]  
L/C: _____  
File: _____

## EXHIBIT A TO FRANCHISE AGREEMENT

## OPERATOR'S LEASE

## TABLE OF CONTENTS

| | | |
|---|---|---|
| Article 1 | **SUMMARY OF FUNDAMENTAL LEASE PROVISIONS** | |
| Sec. | 1.01 Term | 1 |
| | 1.02 Rent | 1 |
| | 1.03 Legal Description | 1 |
| | 1.04 Liability Insurance Limits | 1 |
| | 1.05 Attachments, Exhibits and Addenda | 1 |
| | | |
| Article 2 | **PREMISES AND TERM** | |
| Sec. | 2.01 Premises | 1 |
| | 2.02 Term | 2 |
| | 2.03 Quiet Enjoyment | 2 |
| | 2.04 Use of Premises | 2 |
| | 2.05 Rule Against Perpetuities | 2 |
| | 2.06 Construction and Delivery of Building and Other Improvements | 2 |
| | 2.07 Acceptance of Premises | 2 |
| | 2.08 Tenant's Compliance With Various Requirements | 3 |
| | | |
| Article 3 | **RENT, TAXES, RECORDS AND REPORTS** | |
| Sec. | 3.01 Rent | 3 |
| | 3.01 (A) Basic Rent and Pass Thru Rent | 3 |
| | 3.01 (B) Percentage Rent | 3 |
| | 3.01 (C) Definition of "Gross Sales" | 4 |
| | 3.01 (D) Taxes and Assessments | 4 |
| | 3.01 (E) Other Charges and Expenses | 5 |
| | 3.01 (F) Method and Proof of Payment | 5 |
| | 3.02 Records | 5 |
| | 3.03 Reports | 5 |
| | 3.03 (A) Default in Reporting | 6 |
| | 3.03 (B) Inspection of Records by Landlord | 6 |
| | 3.04 No Abatement of Rent | 6 |
| | 3.05 Interest on Delinquencies | 6 |
| | 3.06 Lien for Rent | 6 |

## TABLE OF CONTENTS (Continued)

| | | | |
|---|---|---|---|
| Article 4<br>Sec. | **OBLIGATIONS OF TENANT** | | |
| | 4.01 | Utilities | 6 |
| | 4.02 | Maintenance and Repair | 7 |
| | 4.03 | Alterations | 7 |
| | 4.04 | Surety | 7 |
| | 4.05 | Liens Against Property | 7 |
| | 4.06 | Assignment by Tenant | 7 |
| | 4.07 | Franchise Agreement | 8 |
| Article 5<br>Sec. | **FIXTURES AND EQUIPMENT** | | |
| | 5.01 | Fixtures | 8 |
| | 5.02 | Removal of Tenant's Property | 8 |
| Article 6<br>Sec. | **INSURANCE AND DAMAGE TO PROPERTY** | | |
| | 6.01 | Liability Insurance | 8 |
| | 6.02 | Rental Insurance | 8 |
| | 6.03 | Property Insurance | 8 |
| | 6.04 | Placement and Policies of Insurance | 9 |
| | 6.05 | Repair and Replacement of Buildings | 9 |
| Article 7<br>Sec. | **RIGHTS OF LANDLORD** | | |
| | 7.01 | Inspection by Landlord | 10 |
| | 7.02 | Indemnity for Litigation | 10 |
| | 7.03 | Waiver of Claims | 10 |
| | 7.04 | Re-entry Upon Default | 11 |
| | 7.05 | Holding Over | 12 |
| | 7.06 | Remedies Cumulative | 12 |
| | 7.07 | Waiver | 12 |
| | 7.08 | Accord and Satisfaction | 12 |
| | 7.09 | Right to Perform for Tenant | 12 |
| | 7.10 | Condemnation | 12 |
| | 7.11 | Subordination and Non-Disturbance | 13 |
| Article 8<br>Sec. | **MISCELLANEOUS** | | |
| | 8.01 | No Agency Created | 14 |
| | 8.02 | Recording of Lease | 14 |
| | 8.03 | Force Majeure | 14 |
| | 8.04 | Paragraph Headings | 14 |
| | 8.05 | Invalidity of a Provision | 14 |
| | 8.06 | Law Governing | 14 |
| | 8.07 | Entire Agreement | 14 |
| | 8.08 | Parties Bound | 15 |
| | 8.09 | Notices or Demands | 15 |

# OPERATOR'S LEASE

**THIS LEASE** shall be considered effective the same date as the Franchise Agreement to which it is attached (the "Franchise Agreement"). The term "Landlord," when used in this Lease, shall refer to McDonald's USA, LLC, a Delaware limited liability company, and the term "Tenant," when used in this Lease, shall refer to the undersigned Tenant.

In consideration of the mutual promises contained in this Lease, the parties agree as follows:

**ARTICLE 1  SUMMARY OF FUNDAMENTAL LEASE PROVISIONS**

1.01  **Term:** (See Article 2.02)  The term of this Lease will begin on _____ and end on _____.

1.02  **Rent:**  See Article 3.01 and Schedule B, attached.

1.03  **Legal Description:**  See Schedule A and Article 2.01.

1.04  **Liability Insurance Limits:**  $5,000,000 per occurrence/$5,000,000 aggregate.

1.05  **Attachments, Exhibits and Addenda:**  This Lease includes the following Attachments, Schedules and Addenda which will take precedence over conflicting provisions (if any) of this Lease, and they are made an integral part of this Lease and are fully incorporated into it by this reference.

  (i)  Schedule A – Legal Description

  (ii)  Schedule B – Rent

  (iii)  Schedule C – Landlord's Interest Addendum

  (iv)  Schedule D – Head Lease dated _____ with amendments dated _____.

  (v)  Schedule E – _____

References in this Article to the other Articles in this Lease are for convenience and to designate some of the other Articles where references to particular Fundamental Lease Provisions will be made. If there is any conflict between a Fundamental Lease Provision and the balance of the Lease, the former will control.

**ARTICLE 2  PREMISES AND TERM**

2.01  **Premises:**  Landlord leases to Tenant the real estate described in Schedule A, attached, together with all easements and appurtenances and all buildings and improvements located on the real estate (all of which are collectively referred to in this Lease as "the Premises"). The Premises are subject to any easements, conditions, encumbrances, restrictions, and party wall agreements, if any, of record and roads and highways and zoning and building code restrictions existing on the date of this Lease.

1

2.02 **Term:**  The term of this Lease will be as indicated in Article 1.01, subject, however, to any rights set forth in this Lease for the earlier termination of the Lease term.  At the request of either party, a supplement establishing the beginning and ending dates of this Lease shall be executed.  Landlord may establish the beginning date by notifying the Tenant in writing of the date it recognizes as the beginning date of the term.

2.03 **Quiet Enjoyment:**  Landlord promises that Tenant, upon paying the rent and all other charges provided for in this Lease, and upon observing and keeping all Tenant's obligations, will lawfully and quietly hold, occupy and enjoy the Premises during the term of this Lease, without hindrance or interference by anyone claiming by, through or under Landlord, subject to the terms of this Lease and any mortgage or encumbrance now or hereafter placed on the Premises by Landlord.

2.04 **Use of Premises:**  Tenant will use and occupy the Premises solely for a McDonald's Restaurant selling only such products and operating in a manner that may be designated by McDonald's USA, LLC.  Tenant agrees to continuously occupy the Premises during the term of this Lease and agrees not to vacate them.  A breach of this provision will be deemed to be substantial.  If Tenant vacates the Premises during the term of this Lease, Landlord will have the right, in addition to its other rights and remedies, to enter the Premises for the purpose of continuing the operation of the McDonald's Restaurant; and, if Landlord so elects, Landlord shall be entitled to all profits, if any, from the operation of the restaurant.  Tenant further agrees to conduct its restaurant business in a manner that will maximize Gross Sales.  Tenant agrees to purchase, install and maintain, all at its own expense, signs and trade fixtures and equipment in accordance with the plans, specifications and layouts of McDonald's USA, LLC, or any of its subsidiaries, unless these items have been furnished by Landlord.

2.05 **Rule Against Perpetuities:**  If the term of this Lease or the accrual of rent have not commenced within one (1) year from date of execution of this Lease, this Lease will become null and void and of no further force and effect.  The sole remedy of Tenant in such case is the return of any monies paid to Landlord in anticipation of this Lease.

2.06 **Construction and Delivery of Building and Other Improvements:**  Landlord will construct or have others construct or remodel or otherwise prepare the Premises for a McDonald's Restaurant in accordance with the then current plans and specifications of McDonald's USA, LLC.  The Premises will be delivered to Tenant when they are sufficiently completed to allow Tenant to install, at Tenant's sole cost and expense, the signs, trade fixtures, equipment and other personal property and improvements necessary to complete the Premises for the operation of a McDonald's Restaurant, unless otherwise provided in Article 1.03.  Tenant will promptly and diligently perform its work in accordance with the plans and specifications previously submitted by or to Tenant and approved by Landlord and in compliance with all applicable federal, state and local statutes, codes and regulations.  Tenant will do all that is reasonably necessary to promptly open the restaurant as soon as possible after delivery of the Premises to the Tenant.

2.07 **Acceptance of Premises:**  By taking possession of the Premises, Tenant acknowledges that Tenant has inspected the Premises and the improvements thereon and found them to be in a safe, satisfactory, and completed condition, ready for occupancy and the installation of trade fixtures, equipment and signage.  All warranties as to the condition of the Premises or its fitness for use, either expressed or implied, are expressly waived by Tenant.  Tenant may, however, receive certain warranties and guarantees, by separate agreement, from

2

McDonald's USA, LLC or one of its subsidiaries; but those warranties will be personal covenants, only, and will not be binding upon the successors and assigns of Landlord.

 2.08 **Tenant's Compliance With Various Requirements:** Tenant may not use or permit any person to use the Premises or any part of it for any use in violation of federal, state or local laws, including, but not limited to, present and future ordinances or other regulations of any municipality in which the Premises are situated.  Tenant will not use or permit any person to use the Premises or any building thereon for the manufacture or sale of intoxicating liquor of any kind whatsoever.  Except as provided below, Tenant may not operate any coin or token operated vending or similar device for the sale of any goods, wares, merchandise, food, beverages or services, including but not limited to, pay telephones, pay lockers, pay toilets, scales, amusement devices, and machines for the sale of beverages, foods, candy, cigarettes or other commodities.  One coin operated newspaper vending machine, Playplace games and one pay telephone may be installed, if they are in compliance with Landlord's current written policy on the installation and maintenance of these items.  During the term of this Lease, Tenant will keep the Premises and all buildings in a clean and wholesome condition and repair and will maintain the Premises so that they fully comply with all lawful health and police regulations. Tenant will conduct the McDonald's Restaurant on the Premises strictly in accordance with the terms and provisions of the Franchise Agreement.  Tenant will minimize all cooking odors and smoke, maintain the highest degree of sanitation and comply with all ordinances, orders, directives, rules and regulations of all governmental bodies, bureaus and offices having jurisdiction over Tenant and over the Premises.  Landlord makes no warranties or representations as to the state of such ordinances, rules, orders and directives, regulations, and Tenant acknowledges that Tenant has independently investigated them and will comply with them.  Landlord makes no warranties or representations that the Premises, when accepted by Tenant, conform with the Federal, State or Industrial Safety Codes.  Tenant will obtain, keep in full force and effect, and strictly comply with, all governmental licenses and permits which may be required for Tenant's use and occupancy of the Premises and the operation of the McDonald's Restaurant.

**ARTICLE 3 RENT, TAXES, RECORDS AND REPORTS**

 3.01 **Rent:** Tenant promises to pay rent to Landlord, without offset or deduction, as follows:

 A. **Basic Rent and Pass Thru Rent:** Tenant will pay monthly to Landlord the Basic Rent and any Pass Thru Rent, if applicable, as indicated in Schedule B, attached.  The first payment of Basic Rent and Pass Thru Rent, if applicable, will be due and payable on the commencement date of the term, and the subsequent monthly rental payments, including any Pass Thru Rent, will be due thereafter, in advance, on or before the first day of every succeeding calendar month.  If the date of commencement of rent occurs on a day other than the first day of the month, the first rental payment (of Basic Rent, Pass Thru Rent, if any, and Percentage Rent, if any) will be adjusted for the proportionate fraction of the whole month so that all rental payments, other than the first, will be made and become due and payable on the first day of each month.

 B. **Percentage Rent:** In addition to the Basic Rent and Pass Thru Rent, if applicable, Tenant promises to pay Percentage Rent to Landlord in the amount and during the periods set forth in Schedule B, attached, on all Gross Sales from the Premises in excess of the Monthly Base Sales set forth in Schedule B, attached.  See Article 3.03 for the manner of payment of Percentage Rent.

3

C.  **Definition of "Gross Sales":**  For the purposes of this Lease, the term "Gross Sales" will mean all receipts (cash, cash equivalent, credit or redeemed gift certificates) or revenue from sales by Tenant, and of all others, from all business conducted upon or from the Premises, whether such sales be evidenced by check, cash, credit, charge account, exchange or otherwise, and will include, but not be limited to, the amount received from the sale of goods, wares and merchandise, including sales of food, beverages and tangible property of every kind and nature, promotional or otherwise, and for services performed at the Premises, together with the amount of all orders taken or received at the Premises, all as may be prescribed or approved by the Franchise Agreement.  Gross Sales will not include sales of merchandise for which cash has been refunded, or allowances made on merchandise claimed to be defective or unsatisfactory, provided that such returned or exchanged merchandise will have been previously included in Gross Sales.  Gross Sales will not include the amount of any sales tax imposed by any federal, state or other governmental authority directly on sales and collected from customers, provided that the amount of the tax is added to the selling price and actually paid by Tenant to such governmental authority.  Each charge or sale upon installment or credit will be treated as a sale for the full price in the month during which such charge or sale is made irrespective of the time when Tenant receives payment (whether full or partial).  In addition, Landlord may, from time to time, permit or allow certain other items to be excluded from Gross Sales.  However, any such permission or allowance may be revoked or withdrawn at the discretion of Landlord and will not stop Landlord from requiring strict compliance with the terms of this Lease.

D.  **Taxes and Assessments:**  In addition to the Basic Rent, the Pass Thru Rent, if applicable, and the Percentage Rent, Tenant will pay directly to the taxing authority, when due, all real estate taxes and special and general assessments that are levied or assessed against the Premises during the term or any extension of this Lease.  Tenant agrees to provide to Landlord, if requested, copies of paid invoices and such other documentation evidencing payment of taxes as may be reasonably requested by Landlord.  If Tenant shall default in the payment of any obligation herein required to be paid by Tenant, then Landlord may pay the same together with any penalty or interest levied on the tax bill, and Tenant will be obligated to repay Landlord on demand for such payment, together with interest on all past due obligations, including interest on the penalty and interest levied under this provision.

(a)  **First and Last Year**:  All real estate taxes and general and special assessment payments of every nature paid during the first and last year of the term of this Lease will be prorated.  This tax proration will be based upon the fiscal year of the taxing authority levying the tax, using the percentage of the taxes payable during the first or last tax fiscal year that Tenant actually occupies, or had the right to occupy, the demised Premises.  The party paying such taxes shall be entitled to reimbursement from the other party for its pro rata share upon demand and the presentation of an itemized statement with copies of all appropriate documentation evidencing payment.

(b)  **Rent Taxes:**  Tenant will also pay promptly, when due, any tax which is levied or assessed against the rental, real or tangible personal property, whether or not called a rental tax, excise tax, sales tax, gross receipts tax, tax on services or otherwise; and Tenant will promptly reimburse Landlord for any similar tax which Landlord is required to pay or, in fact, does pay.  Such payment or reimbursement will not be deducted from Gross Sales.

(c)  **Personal Property Taxes:**  Tenant agrees to pay all personal property taxes levied upon the fixtures, equipment and other improvements located on the Premises whether installed and paid for by Tenant or Landlord.  The personal property taxes for the first and

4

last year of the term of this Lease will be prorated in the same manner as the real estate taxes and assessments.

(d) **Appeal:** Subject to Landlord's rights, Tenant, at Tenant's sole expense, is authorized and hereby permitted to contest and appeal property tax assessments on the demised Premises, and Landlord will cooperate with and assist Tenant in any reasonable manner.

E. **Other Charges and Expenses:** Any other charge or expense of any nature which Landlord may be required to pay by virtue of Landlord's interest in the Premises (including, but not limited to, common area maintenance charges, merchant's association's dues, utility charges, fees and taxes and security service fees – collectively referred to as "other charges") will be promptly paid by Tenant to the party to whom they are due as additional charges. Landlord will provide Tenant with information necessary for Tenant to pay the other charges prior to, or as soon as possible after, the commencement of the term of this Lease. Until Tenant receives this information, Tenant will not be responsible for the other charges.

F. **Method and Proof of Payment:**

(a) Tenant shall, at all times, participate in Landlord's automatic debit/credit transfer program as specified by Landlord from time to time for the payment of all amounts due Landlord pursuant to this Lease. Tenant shall execute and deliver to Landlord such documents and instruments as may be necessary to establish and maintain said automatic debit/credit transfer program.

(b) With respect to Articles 3.01(D) and (E), above, or any other provision in this Lease which requires or contemplates Tenant first paying other charges or expenses, Landlord may, at its exclusive option, elect to make such payments directly to the taxing authority, Head Landlord (if applicable), utility company or other party due a payment for which Tenant is liable under this Lease. If Landlord wishes to exercise this option, Landlord will notify Tenant in writing of its election. From that time on, Landlord shall make such payments directly, and all penalties and expenses thereafter accruing shall be the responsibility of Landlord. If Landlord elects to make any payment directly, Tenant shall, nonetheless, be responsible for making payment to Landlord for any payment Landlord will make, or makes, within ten (10) days of Tenant's receipt of a billing advice from Landlord.

3.02 **Records:** Tenant will keep and preserve upon the Premises complete written records of all Gross Sales conducted in any calendar or business year for a period of three (3) years, in a manner and form satisfactory to Landlord. Tenant will permit Landlord or Landlord's representatives to examine or audit the records at any and all reasonable times, and will, upon Landlord's request, explain the method of keeping records. The books and records will include cash register tapes, properly identified, over-ring slips, sales journals, general ledger, profit and loss statements, balance sheets, purchase invoices, bank statements with canceled checks and deposit advices, corporate books and records, management company books, including, but not limited to, minute books and stock certificate books, state sales tax returns, federal income tax returns, retailer's occupation tax returns or similar returns required to be filed by the state in which the Premises are located.

3.03 **Reports:** By 11:00 a.m. Central Standard Time of the first business day of each month, Tenant will deliver to Landlord, in the manner specified by Landlord from time to time, a statement by Tenant or Tenant's authorized representative, reflecting Gross Sales during the preceding month. Tenant will pay to Landlord on or before ten (10) days after the end of each

5

calendar month during this Lease all sums due based upon Gross Sales as shown in the statement for the period covered by the statement. Within thirty (30) days following the expiration of each calendar year of the term of this Lease, Tenant will deliver to Landlord at the place last fixed for the payment of rent, a statement of Gross Sales for the preceding calendar year (certified, at Tenant's expense, if requested by Landlord, by a Certified Public Accountant of good standing and reputation in the state in which the Premises are located) which will show Gross Sales separately for each monthly period during the preceding year.

    A.  **Default in Reporting:**  Upon failure of Tenant to prepare and deliver promptly any monthly or annual statement required by this Lease or to make any required payment, Landlord may elect to treat Tenant's failure as a substantial breach of this Lease entitling Landlord to terminate this Lease and Tenant's right to possession of the Premises.

    B.  **Inspection of Records by Landlord:**  If Landlord is dissatisfied with statements furnished by Tenant, Landlord may notify Tenant, and Landlord, at its option, may then examine Tenant's books or have a Certified Public Accountant selected by Landlord examine Tenant's books. If such examination discloses any underpayment of Percentage Rent, Tenant will promptly pay the deficient amount. If Tenant contests such deficiency, Landlord will then appoint an independent auditor to examine Tenant's books and records. If the independent audit confirms that there has been an underpayment exceeding two percent (2%) of the Percentage Rent, as represented by Tenant, Tenant will, in addition to the above, reimburse Landlord for the cost of the auditor's examination.

    3.04 **No Abatement of Rent:**  Except as provided in this Lease, damage to or destruction of any portion or all of the buildings, structures and fixtures upon the Premises, by fire, the elements or any other cause, whether with or without fault on the part of Tenant, will not terminate this Lease or entitle Tenant to surrender the Premises or entitle Tenant to any abatement of or reduction in the rent payable, or otherwise affect the respective obligations of the parties, any present or future law to the contrary notwithstanding, subject to Article 6.05 in this Lease.

    3.05 **Interest on Delinquencies:**  If the Tenant is past due on the payment of any amount due Landlord, under this Lease, including accrued interest, the Tenant shall be required, to the extent permitted by law, to pay interest on the past due amount to the Landlord for the period beginning with the original due date for payment to the date of actual payment at an annual rate equal to the highest rate allowed by law or, if there is no maximum rate permitted by law, then fifteen percent (15%). Such interest will be calculated on the basis of monthly compounding and the actual number of days elapsed divided by 365.

    3.06 **Lien for Rent:**  Tenant grants to Landlord a lien upon all Tenant's property located on the Premises, from time to time, for all rent and other sums due from Tenant to Landlord under the provisions of this Lease.

## ARTICLE 4  OBLIGATIONS OF TENANT

    4.01 **Utilities:**  Tenant will pay directly all charges for gas, electricity, or other utilities, sewer charges, taxes and driveway fees, if applicable, and for all water used on the Premises as such charges become due. Tenant's obligation to pay the foregoing charges will commence five (5) days after Tenant's equipment is delivered to the Premises.

4.02 **Maintenance and Repair:** Tenant will, at its expense, (a) keep the entire Premises, all improvements, utility lines and Tenant's or Landlord's fixtures and equipment at all times in good repair, order or condition; (b) replace all broken, damaged or missing personal property, fixtures or equipment; and (c) at the expiration of the term of this Lease, whether by lapse of time or otherwise, surrender the Premises in good repair, order and condition, ordinary wear and tear excepted, and loss by fire and other casualty excepted to the extent that provision for such exception may elsewhere be made in this Lease. Upon request of Landlord, Tenant will remove all signs and other identifying features from the Premises. Tenant's obligation to make repairs to the Premises will include all repairs, whether ordinary or extraordinary, including structural repairs to the foundation, floors, walls and roof.

4.03 **Alterations:** Tenant shall not make any change in, alteration of, or addition to any part of the Premises, or remove any of the buildings or building fixtures without, in each instance, obtaining the prior written consent of Landlord and complying with all governmental rules, ordinances and regulations.

4.04 **Surety:** Before commencement of any construction or installation of any structure, fixture, equipment or other improvement on the Premises, or of any repairs, alterations, additions, replacement or restoration in, on or about the Premises, Tenant will give Landlord written notice specifying the nature and location of the intended work and the expected date of commencement. Tenant will deposit with Landlord, if requested by Landlord, a certificate or other evidence satisfactory to Landlord that Tenant has obtained a bond or that Tenant's building contractor, if any, has furnished a bond in favor of Landlord, with a surety approved by Landlord, guaranteeing the performance and completion of all work free and clear of all liens arising from such work. Landlord reserves the right to withhold its approval of any proposed construction, improvement, repair, alteration or replacement and, without limiting the generality of the foregoing, may require as a condition of its approval that it be permitted to review and approve any contract entered into by Tenant regarding such notices as may be necessary to protect Landlord against liability for liens and claims.

4.05 **Liens Against Property:** Nothing in this Lease will authorize Tenant to do any act which will in any way encumber the title of Landlord to the Premises. The interest or estate of Landlord or the fee owner in the Premises, if Landlord is not the fee owner, will not in any way be subject to any claim by lien or encumbrance, whether by operation of law or by virtue of any express or implied contract by Tenant. Tenant will not permit the Premises to become subject to any mechanics', laborers' or materialsmen's lien for labor or material furnished to Tenant in connection with work of any character performed or claimed to have been performed on the Premises by or at the direction of, or sufferance of, Tenant.

If any lien is filed against the Premises or Tenant's interest in this Lease, at Landlord's option, Tenant will either pay the amount of the lien in full or will, upon demand of Landlord, provide and pay for a non-cancelable bond, placed with a reputable company, approved by Landlord, in an amount deemed sufficient by Landlord, insuring the interest of Landlord and any mortgagee from any loss by reason of the filing of such lien. Tenant will immediately pursue in good faith its legal remedies to remove a lien on the Premises.

4.06 **Assignment by Tenant:** Tenant will not allow or permit any transfer of this Lease or any interest in this Lease by operation of law, or assign, convey, mortgage, pledge or encumber this Lease or any interest in this Lease, or permit the use or occupancy of the Premises or any part thereof without, in each case, obtaining Landlord's prior written consent. No assignment (with or without Landlord's consent) will release Tenant from any of its obligations in this Lease.

Notwithstanding the foregoing, Landlord shall consent to an assignment by Tenant of his rights and interest in this Lease if the Tenant complies with the terms and conditions of the Franchise Agreement pertaining to the assignment of the Franchise Agreement.

4.07 **Franchise Agreement:** Tenant will comply with and perform all covenants contained in the Franchise Agreement. Tenant's breach of any of the terms and covenants of the Franchise Agreement will also constitute a breach of this Lease. Termination, expiration, default or revocation of the Franchise Agreement for any reason, either in whole or in part, will also terminate this Lease, without further notice being required.

**ARTICLE 5  FIXTURES AND EQUIPMENT**

5.01 **Fixtures:** All buildings and improvements and all plumbing, heating, lighting, electrical and air conditioning fixtures and equipment and all other articles of property which, at the date Tenant takes possession of the Premises, are the property of Landlord or of the fee owner of the Premises are and will remain a part of the real estate and be considered to be leased in this Lease. Any additions, alterations or remodeling of improvements made to the Premises will immediately become the property of Landlord and will not be removed by Tenant at the termination of this Lease by lapse of time or otherwise.

5.02 **Removal of Tenant's Property:** At or prior to the termination of this Lease, whether by lapse of time or otherwise, Tenant will, subject to any rights of Landlord under the Franchise Agreement, remove all of its personal property and trade fixtures from the Premises and will repair any damage to the Premises which may have been caused by such removal.

**ARTICLE 6  INSURANCE AND DAMAGE TO PROPERTY**

6.01 **Liability Insurance:** Tenant will pay for and maintain during the entire term of this Lease the following insurance:

A. Worker's Compensation Insurance prescribed by law in the state in which the Premises are located and Employer's Liability Insurance with $100,000/$500,000/$100,000 minimum limit. If the state in which the Premises are located allows the option of carrying no Worker's Compensation, and Tenant chooses to exercise that option, Tenant shall nonetheless carry and maintain other insurance with coverage and limits as approved by the Landlord.

B. Commercial General Liability Insurance in a form approved by Landlord, on an occurrence basis, with limits as described in Article 1.04.

C. Fire Legal Liability Insurance with minimum limits of $500,000 per occurrence.

6.02 **Rental Insurance:** Tenant will maintain and keep in force rental insurance in an amount equal to not less than the total of one (1) year's Basic Rent and Pass Thru Rent, if applicable, as specified in Article 1.02 of this Lease.

6.03 **Property Insurance:** Tenant will maintain and keep in force, all risk insurance, including flood, earthquake and earth movement coverage, upon the Premises, fixtures, operational equipment, signs, furnishings, decor, plate glass and supplies, in a full replacement cost form obligating the insurer to pay the full cost of repair or replacement. It is intended that neither Landlord nor Tenant will be a co-insurer, and to that end, if the insurance proceeds are not adequate to rebuild the building or other improvements located on the Premises, Tenant will

8

be obligated for the difference between the proceeds obtained and the actual cost of the restoration of the Premises, fixtures, operational equipment, signs, furnishings, decor, plate glass and supplies.

    6.04 **Placement and Policies of Insurance:** All insurance policies required to be carried in this Lease will name Landlord and any party designated by Landlord as additional insured. All policies will be effective on or prior to the date Tenant is given possession of the Premises for the purpose of installing equipment, and evidence of payment of Premiums and duplicate copies of policies of the insurance required in this Lease will be delivered to Landlord at least thirty (30) days prior to the date that Tenant opens for business or thirty (30) days prior to the expiration dates of an existing policy of insurance. All policies of insurance will include as an additional insured any mortgagee, as its interest may appear, and will include provisions prohibiting cancellations or material changes to the policy until thirty (30) days prior written notice has been given to Landlord.

    If Tenant should fail to obtain the required insurance, Landlord may, but is not obligated to, purchase the insurance, adding the premiums paid to Tenant's monthly rent. Tenant may authorize Landlord to purchase and to administer the required minimum insurance on Tenant's behalf. However, Landlord, by placement of the required minimum insurance, assumes no responsibility for premium expense nor guarantees payment for any losses sustained by Tenant. Landlord may relieve itself of all obligations with respect to the purchase and administration of the required insurance coverage by giving ten (10) days written notice to Tenant.

    All insurance will be placed with a reputable insurance company licensed to do business in the state in which the Premises are located and having a financial size category equal to or greater than IX and a policyholders rating of "A +" or "A", as assigned by Alfred M. Best and Company, Inc., unless otherwise approved by Landlord. Tenant further agrees to increase the various insurance coverages specified above from time to time upon the written request of Landlord to meet changing economic conditions and requirements imposed upon Landlord under the Landlord's Head Lease (if applicable) and loan agreements, if any.

    6.05 **Repair and Replacement of Buildings:** If the building on the Premises is damaged by fire or any other casualty, Landlord will, within a reasonable time from the date of the damage or destruction, repair or replace the building so that Tenant may continue in occupancy. Landlord's obligation to rebuild or restore the Premises will, however, be only to the extent of insurance proceeds recovered. Basic Rent and any Pass Thru Rent required to be paid in this Lease will not abate during the period of untenantability. If the building cannot be replaced or repaired within a reasonable time due to the inability of Landlord to obtain materials and labor, or because of strikes, acts of God or governmental restrictions that would prohibit, limit or delay the construction, then the time for completion of the repair or replacement will be extended accordingly. However, in any event, if the repair or replacement of the building has not been commenced within a period of one (1) year from the date of the damage or destruction, Tenant or Landlord may, at their option, terminate this Lease. If any damage or destruction occurs during the last five (5) years of the term of this Lease to the extent of fifty percent (50%) or more of the insurable value of the building, Landlord may, by notice to Tenant within forty (40) days after the occurrence of the damage or destruction, in lieu of repairing or replacing the building, elect to terminate this Lease as of the date of the damage or destruction. Tenant hereby expressly waives and releases any and all claims against Landlord for damages in case of Landlord's failure to rebuild or restore the building in accordance with the provisions of this Article. Tenant's sole remedy for any such failure will be to elect to terminate this Lease as of

the date of occurrence of the damage or destruction. If the building and other improvements are not repaired, restored or replaced, for any reason, all proceeds of the all risk coverage insurance applicable to the building and other permanent improvements will be paid and given to Landlord. Tenant agrees to execute and deliver any release or other document Landlord may request to obtain the release or control of the proceeds.

If Landlord repairs and restores the Premises, as required above, Tenant agrees to promptly repair, replace, restore or rebuild Tenant's leasehold improvements, equipment and furnishings ("Tenant's Improvements") in accordance with the current standards and specifications for McDonald's Restaurants upon notice from Landlord that the Premises are ready for Tenant's Improvements. Tenant agrees to submit for Landlord's approval, all plans and specifications for Tenant's Improvements to Landlord within thirty (30) days after Landlord delivers its plans and specifications for the restored Premises to Tenant.

**ARTICLE 7  RIGHTS OF LANDLORD**

7.01 **Inspection by Landlord:** Landlord or any authorized representative of Landlord may enter the Premises at all times during reasonable business hours for the purpose of inspecting the Premises.

7.02 **Indemnity for Litigation:** If Landlord becomes subject to any claim, demand or penalty or becomes a party to any suit or other judicial or administrative proceeding by reason of any act occurring on the Premises, or by reason of an omission with respect to the business or operation of the McDonald's Restaurant, Tenant will indemnify and hold Landlord harmless against all judgments, settlements, penalties, and expenses, including reasonable attorney's fees, court costs and other expenses of litigation or administrative proceeding incurred by or imposed on Landlord in connection with the investigation or defense relating to such claim or litigation or administrative proceeding. At the election of Landlord, Tenant will also defend Landlord.

Tenant will pay all costs and expenses, including reasonable attorney's fees, which may be incurred by Landlord in enforcing any of the covenants and agreements of this Lease. All such costs, expenses and attorney's fees will, if paid by Landlord, together with interest, be additional rent due on the next rent date after such payment or payments.

7.03 **Waiver of Claims:** Landlord and Landlord's agents and employees will not be liable for, and Tenant waives claims for, damage to persons or property sustained by Tenant or any person claiming through Tenant resulting from any accident or occurrence in or upon the Premises or the building of which they are a part, including, but not limited to, claims for damage resulting from: (a) equipment or appurtenances becoming out of repair; (b) Landlord's failure to keep the building or the Premises in repair; (c) injury done or occasioned by wind, water or other natural element; (d) any defect in or failure of plumbing, heating or air conditioning equipment, electric wiring or installation thereof, gas, water and steam pipes, stairs, porches, railings or walks; (e) broken glass; (f) the backing up of any sewer pipe or downspout; (g) the bursting, leaking or running of any tank, tub, washstand, water closet, waste pipe, drain or any other pipe or tank in, upon or about such building or Premises; (h) the escape of steam or hot water (it being agreed that all the foregoing are under the control of Tenant); (i) water being upon or coming through the roof, skylight, trapdoor, stairs, walks or any other place upon or near such building of the Premises or otherwise; (j) the falling of any fixture, plaster or stucco; (k) interruption of service of any utility.

7.04 **Re-entry Upon Default:** If (a) Tenant defaults in the payment of any installment of Basic Rent, Pass Thru Rent or Percentage Rent or any additional sum due in this Lease; (b) Tenant defaults in any of the covenants, agreements, conditions or undertakings to be performed by Tenant other than the payment of rent (Basic Rent, Pass Thru Rent, Percentage Rent or additional charges) and such default continues for ten (10) days after notice in writing to Tenant; (c) Tenant defaults in any of the terms of the Franchise Agreement or if the Franchise Agreement should terminate, whether by lapse of time or otherwise; (d) proceedings in bankruptcy or for liquidation, reorganization or rearrangement of Tenant's affairs are instituted by or against Tenant; (e) a receiver or trustee is appointed for all or substantially all of Tenant's business or assets on the grounds of Tenant's insolvency; (f) a trustee is appointed for Tenant after a petition has been filed for Tenant's reorganization under the Bankruptcy Act of the United States; (g) Tenant makes an assignment for the benefit of its creditors; or (h) Tenant vacates or abandons the Premises, then in any of the above events, Landlord, at its election, may declare the term of this Lease ended and, either with or without process of law, re-enter, expel, remove and put out Tenant and all persons occupying the Premises under Tenant, using such force as may be necessary in so doing, and repossess and enjoy the Premises. Such re-entry and repossession will not work a forfeiture of the rents to be paid or terminate the covenants to be performed by Tenant during the full term of this Lease.

Upon the expiration of the term of this Lease by reason of any of the events described above, or in the event of the termination of this Lease or right to possession by summary dispossession proceedings or under any provision of law now or at any time in force, whether with or without legal proceedings, Landlord may, at its option, relet the Premises or any part for the account of Tenant and collect the rents therefor, applying them first to the payment of expenses Landlord may have in recovering possession of the Premises, including legal expenses and attorney's fees, and for putting the Premises into good order or condition or preparing or altering the same for re-rental, expenses, commissions and charges paid, assumed or incurred by Landlord in reletting the Premises, and then to the fulfillment of the covenants of Tenant in this Lease. Any such reletting may be for the remainder of the term of this Lease or for a longer or shorter period. In any case and whether or not the Premises or any part thereof is relet, Tenant will pay to Landlord the Basic Rent, Pass Thru Rent, if applicable, Percentage Rent, any additional charges, and all other charges required to be paid by Tenant up to the time of termination of this Lease, or of recovery of possession of the Premises by Landlord, as the case may be. Thereafter, Tenant covenants and agrees, if required by Landlord, to pay to Landlord, until the end of the term of this Lease, the equivalent of the amount of all the Basic Rent and Pass Thru Rent, if applicable, reserved in this Lease, Percentage Rent, and all other charges required to be paid by Tenant, less the net income of reletting, if any. These payments will be due and payable by Tenant to Landlord on the rent days above specified. In any of the circumstances described above, Landlord will have the election to recover against Tenant, as damages for loss of the bargain and not as a penalty, an aggregate sum which, at the time of such termination of this Lease, or of such recovery of possession of the Premises by Landlord, represents the then present worth of the excess, if any, of the aggregate of the Basic Rent, Pass Thru Rent, if applicable, Percentage Rent, and all other charges payable by Tenant in this Lease that would have accrued for the balance of the term over the aggregate rental value of the Premises for the balance of the term. Percentage Rent for purposes of this Article shall be deemed to mean the Percentage Rent which Landlord can show could be generated from the Premises but in no event less than the greatest amount of Percentage Rent paid by Tenant during any year. Nothing in this Lease contained will limit or prejudice Landlord's right to prove and obtain as liquidated damages arising out of such breach or termination the maximum amount allowed by any statute or rule of law which may govern the proceeding in which such damages are to be proved.

    7.05 **Holding Over:** Tenant will not hold over beyond the expiration or sooner termination of the term of this Lease. If Tenant does hold over, it will give rise to a tenancy at the sufferance of Landlord upon the same conditions as are provided for in this Lease with a monthly rental for the period of such holding over which is double the Basic Rent, Pass Thru Rent, if applicable, and Percentage Rent last paid by Tenant during the term of this Lease, and interest thereon, as liquidated damages, and not as a penalty. Landlord's acceptance of any rent after holding over begins does not renew this Lease. This provision does not waive Landlord's rights of re-entry or any other right in this Lease resulting from Tenant's breach of the covenant not to hold over or any other breach in this Lease.

    7.06 **Remedies Cumulative:** The remedies in this Lease granted to Landlord will not be exclusive or mutually exclusive, and Landlord will have such other remedies against Tenant as may be permitted in law or in equity at any time. Any exercise of a right of termination by Landlord will not be construed to eliminate any right of Landlord to damages on account of any default of Tenant.

    7.07 **Waiver:** No delay or omission of Landlord to exercise any right or power arising from any default will impair any such right or power or will be construed to be a waiver of any such default or an acquiescence under this Lease. No waiver of any breach of any of the covenants of this Lease will be held to be a waiver of any other breach or waiver, acquiescence in or consent to any further or subsequent breach of the same covenant. The rights in this Lease given to receive, collect or sue for any rent, monies or payments or to enforce the terms, provisions and conditions of this Lease, or to prevent the breach or non-observance thereof, or to exercise any right or remedy in this Lease, will not in any way affect the right or power of Landlord to declare the term ended and to terminate this Lease because of any default in or breach of any of the covenants, provisions or conditions of this Lease.

    7.08 **Accord and Satisfaction:** No payment by Tenant or receipt by Landlord of a lesser amount than the monthly rent in this Lease stipulated will be deemed to be other than on account of the earliest stipulated rent, nor will any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction. Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy provided for in this Lease.

    7.09 **Right to Perform for Tenant:** If Tenant should fail to perform any of its obligations under the provisions of this Lease, Landlord, at its option, may (but will not be required to) do the same or cause the same to be done. In addition to any and all other rights and remedies of Landlord, the cost incurred by Landlord in connection with such performance by Landlord will be an additional charge due from Tenant to Landlord, together with interest thereon at the maximum rate permitted by law in the state in which the Premises are located on the next rent date after such expenditure or, if there is no maximum rate permitted by law, at fifteen percent (15%) per annum.

    7.10 **Condemnation:** If the entire Premises are condemned under eminent domain, or acquired in lieu of condemnation, for any public or quasi-public use or purpose, all rentals and taxes or other charges will be paid to that date, and Tenant will have the right to make a claim for the value of its leasehold estate. Tenant will, also, have the right to claim and recover such compensation as may be separately awarded for any and all damage to Tenant's business by reason of the condemnation and for any cost or loss to which Tenant might be put in removing Tenant's merchandise, furniture, equipment and other personal property. Tenant specifically

waives and releases any claim it may have, however, for the value of the building, fixtures and other improvements on the Premises whether or not installed or paid for by Tenant.  Tenant further agrees to subordinate any claim it may have to Landlord's claim for the value of the improvements.

If only a part of the Premises is taken or condemned and Landlord determines that the operation of a McDonald's Restaurant on the Premises is no longer economically feasible or desirable, Landlord may at any time, either prior to or within a period of sixty (60) days after the date when possession of the Premises will be required by the condemning authority, elect to terminate this Lease.  If Landlord fails to exercise its option to terminate this Lease or will not have any such option, Landlord will (1) with reasonable promptness, make necessary repairs to and alterations of the improvements on the Premises for the purpose of restoring it to substantially the same use as that which was in effect immediately prior to such taking, to the extent that may be necessary by the condemnation; and (2) be entitled to the entire award for such partial taking.  If Landlord does not elect to terminate this Lease, Tenant's Basic Rent and Pass Thru Rent, if applicable, will be reduced by a fraction, the numerator of which will be the total condemnation award or settlement and the denominator of which will be the fair market value of the Premises, prior to the taking, as determined by an independent appraiser selected by the Landlord.

7.11 **Subordination and Non-Disturbance:**  This Lease and all of Tenant's rights, title and interest under the Lease will be subject, subordinated and inferior to the lien of any and all mortgages and to the rights of all parties under any sale and leaseback of the Premises and to any and all terms, conditions, provisions, extensions, renewals or modifications of any such mortgage or mortgages or sale and leaseback which Landlord or any grantee of Landlord (collectively hereafter called "Fee Owner") has or may place upon the Premises and the improvements thereon, in the same manner and to the same extent as if this Lease had been executed subsequent to the execution, delivery and recording of such mortgage or of the deed and lease under the sale and leaseback.  This provision is intended to include the right of any grantee or Landlord under a sale and leaseback to further encumber the property with one or more mortgages, all of which are declared to be superior to the interest of Tenant in this Lease.

If a mortgagee or any other person acquires title to the Premises pursuant to the exercise of any remedy provided for in such mortgage, or in the event of the default under the Lease related to a sale and leaseback of the Premises, Tenant's right of possession will not be disturbed provided (a) Tenant is not then in default under this Lease and (b) Tenant attorns to such title holder.  Tenant agrees that upon a mortgage foreclosure it will attorn to any mortgagee or assignee or any purchaser at the foreclosure sale (collectively called "Purchaser") as its Landlord and in the case of a default under the terms of the lease used in a sale and leaseback, it will attorn to the Fee Owner of the Premises as its new Landlord and, in either event, this Lease will continue in full force and effect as a direct Lease between Tenant and such party under all of the terms of this Lease.  If there is a foreclosure of a mortgage placed on the property by a grantee under a sale and leaseback, such attornment will be required only if, at the time of such foreclosure, the Lease used in the sale and leaseback is also in default.

The subordination of this Lease to any mortgagee of Fee Owner provided for in this Lease or to any Lease under a sale and leaseback arrangement will be automatic and self-operative, and no special instrument of subordination will be necessary.  Without limiting such automatic and self-operative subordinations, however, Tenant will, on demand, at any time or times, execute, acknowledge and deliver to Fee Owner, without expense to Fee Owner, any and all instruments that may be necessary or proper to evidence the subordination of this Lease and all

13

rights in this Lease to the lien of any such mortgage, or to any such lease under a sale and leaseback arrangement. If Tenant fails, at any time, to execute, acknowledge and deliver any such subordination instrument within five (5) days after receipt of the notice, in addition to any other remedies available, Landlord may execute, acknowledge and deliver the same as the attorney-in-fact on Tenant's behalf; and Tenant hereby irrevocably makes, constitutes and appoints Landlord, its successors and assigns, such attorney-in-fact for that purpose.

**ARTICLE 8  MISCELLANEOUS**

8.01 **No Agency Created:** Tenant will have no authority, express or implied, to act as agent of Landlord or any of its affiliates for any purpose. Tenant is, and will remain, an independent contractor responsible for all obligations and liabilities of, and for all loss or damage to, the Premises, including any personal property, equipment, fixtures or real property connected with them and for all claims or demands based on damage or destruction of property or based on injury, illness or death of any person or persons, directly or indirectly, resulting from the operation of the McDonald's Restaurant located on the Premises.

8.02 **Recording of Lease:** Tenant will not record this Lease without the written consent of Landlord. However, upon the request of either party, the other party will join the execution of a memorandum or a so-called "short-form" of this Lease for the purpose of recordation. The memorandum or short form of this Lease will describe the parties, the Premises and the term of this Lease and will incorporate this Lease by reference. The party requesting execution of the memorandum will bear all costs for recording it.

8.03 **Force Majeure:** Whenever a period of time is provided in this Lease for either party to do or perform any act or thing, except the payment of monies, neither party will be liable for any delays due to strikes, lockouts, casualties, acts of God, war, governmental regulation or control or other causes beyond the reasonable control of the parties, and in any event the time period for the performance of an obligation in this Lease will be extended for the amount of time of the delay. This Article will not apply to, or result in, an extension of the term of this Lease.

8.04 **Paragraph Headings:** Headings in this Lease are for convenience only and are not to be construed as part of this Lease and will not be construed as defining or limiting in any way the scope or intent of the provisions of this Lease.

8.05 **Invalidity of a Provision:** If any term or provision of this Lease will to any extent be held invalid or unenforceable, the remaining terms and provisions of this Lease will not be affected, but each term and provision of this Lease will be valid and be enforced to the fullest extent permitted by law. If any material term of this Lease is stricken or declared invalid, Landlord reserves the right to terminate this Lease at its sole option.

8.06 **Law Governing:** The terms and provisions of this Lease will be governed by the laws of the State of Illinois.

8.07 **Entire Agreement:** This Lease and the Franchise Agreement will be deemed to include the entire agreement between the parties, and it is agreed that neither Landlord nor anyone acting in its behalf has made any statement, promise or agreement or taken upon itself any engagement whatever, verbally or in writing, in conflict with the terms of this Lease, or that in any way modifies, varies, alters, enlarges, or invalidates any of its provisions, or extends the term of this Lease, and that no obligations of Landlord will be implied in addition to the obligations expressed in this Lease. This agreement cannot be changed orally but only by an

agreement in writing signed by Landlord and Tenant.  Nothing in this Lease or in any related agreement, however, is intended to disclaim the representations made in the Franchise Disclosure Document furnished to Tenant.

    8.08 **Parties Bound:**  The terms of this Lease will extend to and be binding upon the administrators, executors, heirs, assigns and successors of the parties, subject to the terms of Article 4.06.

    8.09 **Notices or Demands:**  All notices to or demands upon Landlord or Tenant given under any of the provisions of this Lease will be in writing.  Any notices or demands from Landlord to Tenant will be deemed to have been duly and sufficiently given if a copy has been delivered personally or mailed by United States registered or certified mail in an envelope properly stamped and addressed to Tenant at the address of the Premises.  Any notices or demands from Tenant to Landlord will be deemed to have been duly and sufficiently given if mailed by registered or certified mail in an envelope properly stamped and addressed to Landlord at One McDonald's Plaza, Oak Brook, Illinois 60523, Attention:  Director, U.S. Legal Department.  Mailed notices shall be deemed received three (3) business days after being deposited in the U.S. Mail.  Either party, by notice, may change the address to which notice will be sent, but all notices mailed to Tenant at the address of the restaurant on the Premises will be deemed sufficient.

    **To indicate their consent** to this Operator's Lease the parties, or their authorized representatives or officers, have signed this document.

**TENANT:**                                    **LANDLORD:  McDONALD'S USA, LLC**

                                                      By:  _____

                                                      Date Signed:  _____

                                                      Location Code:  _____

                                                       Prepared by:  _____