IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT MAGEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16 cv 5652 |
| | ) Judge John F. Kness |
| McDONALD'S CORPORATION, *et al.*, | ) Magistrate Judge Heather K. McShain |
| | ) |
| Defendants. | ) |

## McDONALD'S USA, LLC'S SECOND NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF SUMMARY JUDGMENT

Defendant, McDonald's USA, LLC ("McDonald's"), submits with this Notice an Order Granting Defendants' Motion to Dismiss issued by Judge William Alsup on September 30, 2020 in *Szwanek v. Jack in the Box*, No. C 20-0295 (N.D. Cal. Sept. 30, 2020), as additional supplemental authority in support of its Renewed Motion for Summary Judgment [Dkt. 192] in the above-captioned case.[1]

Judge Alsup, relying upon Judge Marvin E. Aspen's decision in *Davis v. Wendy's Int'l, LLC*, 2019 WL 6769689 (N.D. Ill. Dec. 12, 2019) (holding that Wendy's similar late-night drive-thru-only policy does not violate the ADA because it "affects non-disabled and disabled pedestrians identically"), dismissed the same ADA and Unruh Act claims as in this case, holding that plaintiffs who are blind and unable to drive a motor vehicle and who were denied service in a restaurant's drive-thru because they were on foot late at night when the lobby was closed failed to allege that they were discriminated against "on the basis of disability" under § 12182(a) of the ADA, which requires a plaintiff to prove that but for her disability she would have been able to access the

---

[1] McDonald's previously filed a notice of supplemental authority concerning Judge Marvin E. Aspen's decision in *Davis v. Wendy's Int'l, LLC*, 2019 WL 6769689 (N.D. Ill. Dec. 12, 2019).

1

goods or services desired. The court held that because Jack in the Box, like McDonald's, and like Wendy's, refuses service to any pedestrian who walks up to the drive-thru to order food, "the burden placed on *all pedestrians*, disabled or not, is exactly the same; that is, neither group can gain access to Jack in the Box's services during the wee hours unless they either drive, ride as a passenger in someone else'[s] car, or utilize a food delivery service." Slip op. at 4-5 (emphasis in original). Therefore, it is not plaintiffs' disability that precludes them from obtaining food in the drive-thru, but their status as pedestrians. The plaintiffs in *Jack in the Box* were represented by the same plaintiff's counsel as in this case.

This decision is relevant to McDonald's argument in the pending motion for summary judgment that Magee was not denied service "on the basis of disability." 42 U.S.C. § 12182(a). Def.'s Corrected, Am. Renewed Mem. of Law in Supp. of Renewed Mot. for Summ. J., at 19-21 [Dkt. 211], Def.'s Am. Reply Br. In Supp. of Renewed Mot. for Summ. J., at 14-17 [Dkt. 263].

Dated: October 5, 2020

Respectfully submitted,

McDONALD'S USA, LLC, Defendant

By: /s/ Mark L. Shapiro
One of Its Attorneys

Mark L. Shapiro (ARDC #2566753)
Phillip M. Schreiber (ARDC #6209973)
Jennifer J. Froehlich (ARDC #6295017)
Holland & Knight LLP
150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
312-263-3600
mark.shapiro@hklaw.com
phillip.schreiber@hklaw.com
jennifer.froehlich@hklaw.com

#79277204_v2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY SZWANEK, and JAMES LOPEZ II, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>JACK IN THE BOX, INC., DIFFERENT RULES LLC, ARGO HOSPITALITY SERVICES, INC., and THREE FOODS, INC.,<br><br>    Defendants. | No. C 20-02953 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

This putative class action alleges that defendants' restaurants' late-night practice of providing service via "drive-thru" only, violates the Americans with Disabilities Act and the Unruh Civil Rights Act, because it discriminates against visually impaired patrons, like plaintiffs, who cannot drive because of their disability. The complaint seeks monetary, declaratory, and injunctive relief. Defendants move to dismiss or, in the alternative, for judgment on the pleadings. To the extent stated herein, defendants' motion to dismiss is **GRANTED**.

**STATEMENT**

The following allegation are from the operative complaint (Dkt. No. 17). Defendant Jack in the Box, Inc. "owns, operates and/or leases Jack in the Box restaurants at thousands of locations throughout the United States." Defendant Different Rules LLC became the successor company to Jack in the Box, Inc. in July 2019. Both companies have the right to enforce franchise agreements. Defendants Argo Hospitality Services, Inc., and Three Powers Foods, Inc. (hereinafter "franchisee defendants") are California-based franchisees of Jack in the Box restaurants, located in El Sobrante and Montebello, respectively (*id*. ¶¶ 12–15).

Jack in the Box restaurants offer both lobby service and "drive-thru" service. During late night and early morning hours, however, many Jack in the Box restaurants provide only service through the drive-thru. That is, patrons cannot physically enter Jack in the Box restaurants and can order food only by using the drive-thru. The drive-thru, in turn, is only accessible to motor vehicles. Jack in the Box restaurants do not allow pedestrians to use the drive-thru (*id*. ¶¶ 2, 22). The complaint does not allege the exact operational hours Jack in the Box restaurants begin their drive-thru-only service period.

Plaintiffs Judy Szwanek and James Lopez II are California residents who have visual impairments that render them unable to operate a motor vehicle (*id*. ¶¶ 10–11, 46, 59). The Jack in the Box restaurant in El Sobrante is a six-minute walk from Szwanek's home, and the one in Montebello is an eleven-minute walk from Lopez's home. Plaintiffs regularly patronize the Jack in the Box restaurants near their respective homes. In 2018, Szwanek walked to the Jack in the Box restaurant near her home during a late-night drive-thru-only service period. Because "Szwanek is blind and unable to lawfully operate a motor vehicle, she was unable to independently access" the Jack in the Box restaurant in El Sobrante (*id*. ¶ 46).

Similarly, in 2019, when Lopez walked to the Jack in the Box restaurant in Montebello during a late-night drive-thru-only service period, he could not independently access Jack in the Box's services because he was unable to drive a motor vehicle as a result of his disability (*id*. ¶ 59).

1  Plaintiffs allege that the blind are barred from independently using or enjoying
2  defendants' services during late-night hours because "the blind are unable to drive or walk up
3  to the drive-thru window, and because Jack in the Box interiors are closed during late-night
4  operating times" (*id*. ¶ 26).

Plaintiffs further allege that "modest accommodations," such as "installing a walk-up window; allowing blind customers to access the lobby; and/or establishing a phone number or other ordering system by which the blind can order food and have it delivered to them through the front door" would allow the blind access during late-night hours (*id*. ¶ 27).

Accordingly, plaintiffs brought this putative class action against defendants for alleged violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*., and the Unruh Civil Rights Act, Cal. Civ. Code, §§ 51 *et seq*. Franchisor defendants move to dismiss the complaint with prejudice for failure to state a claim or, in the alternative, for judgment on the pleadings. Franchisee defendants filed motions to join franchisor defendants' motion. This order follows full briefing and oral argument.

1. **LEGAL STANDARD.**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court ruling on a motion to dismiss must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681.

**ANALYSIS**

The complaint alleges violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*. Plaintiffs' Unruh Act claims as well as their claims for declaratory relief are also predicated on their ADA claims.

3

1    Title III provides: "[n]o individual shall be discriminated against on the basis of disability
2    in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or
3    accommodations of any place of public accommodation by any person who owns, leases (or
4    leases to), or operates a place of public accommodation." *Id*. 12182(a). Accordingly, "[t]o
5    prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled
6    within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or
7    operates a place of public accommodation; and (3) the plaintiff was denied public
8    accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481
9    F.3d 724, 730 (9th Cir. 2007) (citation omitted).

Defendants argue that plaintiffs' ADA claims fail because (1) "the allegedly discriminatory practice — not allowing pedestrians to use the drive-through — does not discriminate against persons 'on the basis of disability'"; and (2) because plaintiffs are not disabled within the meaning of the ADA, as their claims are predicated not on "seeing," but on "driving," which they assert is not a major life activity (Dkt. No. 35 at 4). This order agrees.

*First*, plaintiffs fail to show they were discriminated against on the basis of their disability. In *McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004), our court of appeals held that the plaintiff had sufficiently alleged that he was discriminated against "by reason of" his disability where a facially neutral policy burdened him in a manner "different from and greater than it burdened non-disabled residents." In so holding, *McGary* explained that our court of appeals has "repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced." *Id*. at 1265.

Plaintiffs argue that defendants' late-night policy of providing drive-thru-only service burdens them " 'in a manner different from and greater' than non-disabled pedestrians. Unlike non-disabled pedestrians, [p]laintiffs are categorically unable to independently operate a motor vehicles under any set of circumstances" (Opp. at 4). Defendants respond that the burden placed on *all pedestrians*, disabled or not, is exactly the same; that is, neither group can gain access to Jack in the Box's services during the wee hours unless they either drive, ride as a

4

passenger in someone else' car, or utilize a food delivery service. For instance, as defendants argued during oral argument, a non-disabled fifteen-year-old pedestrian who cannot drive because of her age bears the same burden as plaintiffs.

This order agrees with defendants and notes that it is even a narrower group of people that bear the burden of defendants' policy: night-owls who do not or cannot drive for any numbers of reasons, who are within walking distance of a Jack in the Box and are willing to venture into the darkness during the most dangerous parts of the day to buy a burger and take it back home. Those outside walking distance are not burdened by the policy.

Comparison to *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996), is instructive in further illustrating this point. There, the visually impaired plaintiffs used guide dogs. They alleged that Hawaii's imposition of a 120-day quarantine on carnivorous animals entering the state discriminated against them on the basis of their disability in violation of the ADA. Our court of appeals agreed, reasoning that the blind plaintiffs were burdened in a manner different than and greater than others because given their "unique dependence" on guide dogs, the quarantine requirement effectively denied them meaningful access to state services, while such services "remain[ed] open and easily accessible by others." *Id*. 1484. Here, by contract, the burden visited upon all pedestrians, blind and nonblind, is not disproportionate but rather the same.

Thus, defendants' policy does not burden the blind in a manner different than or greater than it affects non-disabled pedestrians. *See, e.g., Davis v. Wendy's Int'l, LLC*, 2019 WL 6769689 (N.D. Ill. Dec. 12, 2019) (Judge Marvin E. Aspen) (observing that Wendy's similar late-night drive-thru-only policy "affects non-disabled and disabled pedestrians identically.").

For this reason, this order agrees with defendants that their late-night policy of operating via the drive-thru-only, "affects people based on, at most, their inability to drive for any reason, not on the basis of any disability" (Dkt. No. 35 at 6–7). Accordingly, the complaint does not plausibly establish that defendants excluded plaintiffs by reason of their disability, *i.e.* for being visually impaired.

*Secondly*, plaintiffs' claims fail for the additional reason that they are not disabled within the meaning of the ADA. To be sure, the complaint sufficiently alleges that plaintiffs have visual impairments. But, in determining whether an individual is disabled as defined under the ADA, courts must examine three elements: (1) determine whether a plaintiff's condition constitutes a physical or mental impairment; (2) identify the life activity upon which the plaintiff relies and determine whether or not it constitutes a major life activity; and (3) whether the impairment substantially limited the identified major life activity. *See Bragdon v. Abbot*, 524 U.S. 624 (1998).

While the first element is unquestionably met, the complaint fails on the second element. Specifically, as a matter of judicial common sense, plaintiffs' claims rely on the life activity of driving, not seeing. Indeed, plaintiffs' own opposition brief illustrates this point: stating that "[p]laintiffs allege that the impairment is substantial in that it prevents them from safely operating motor vehicles" (Opp. at 6). So, too, do the allegations in the complaint (*see* Dkt. No. 17 at ¶¶ 2–3, 10–11, 26, 46, 59). Importantly, however, driving is not a major life activity enumerated under the ADA. *See* 42 U.S.C. § 12102(2)(A). And, while the ADA list of major life activities is non-exhaustive, plaintiffs fail to show that driving in this context — to access a drive-thru for the purpose of enjoying a late-night burger — is a major life activity under the ADA. *See, e.g.*, *Morey v. McDonald's Corp.*, 2020 WL 2542161 (N.D. Ill. May 19, 2020) (Judge Joan H. Lefkow) (finding that driving did not constitute a major life activity based on an analogous scenario); *see also Mandujano v. Geithner*, 2011 WL 2550621, at *5 (N.D. Cal. June 27, 2011) (Magistrate Judge Laurel Beeler) (citations omitted) (citing to decisions that "have held that driving by itself does not constitute a major life activity under the ADA.").

Plaintiffs' reliance on our court of appeals' unpublished opinion in *Livingston v. Fred Meyer Stores, Inc.*, 388 F.App'x 738 (9th Cir. 2010), is misplaced. There, our court appeals held that "seeing" was undoubtedly a major life activity, but explicitly held off considering the plaintiff's alternative argument that "her vision impairment substantially limit[ed] her major life activit[y] of . . . driving[.]" *Id.* at 740 n.1.

6

Accordingly, plaintiffs are not disabled within the meaning of the ADA because notwithstanding their allegations that they are limited in the major life activity of seeing, their claims are predicated on driving, which is not a major life activity.

Lastly, it bears mentioning that the only other decisions that either party cites to that have considered whether or not a restaurant' late-night policy of offering services via the drive-thru only discriminates against the blind, found against the plaintiffs. In *Morey v. McDonald's Corp.*, 2020 WL 2542161 (N.D. Ill. May 19, 2020) (Judge Joan H. Lefkow), for instance, the court reasoned that the visually impaired plaintiff was not disabled within the meaning of the ADA because driving, the life activity at issue, did not constitute a major life activity. And, in *Davis v. Wendy's Int'l, LLC*, 2019 WL 6769689 (N.D. Ill. Dec. 12, 2019) (Judge Marvin E. Aspen), the court held that defendant's policy did not discriminate *on the basis* of the plaintiff's visual impairment, but on the basis of being a pedestrian/non-driver. Put differently, the court found that the plaintiff's visual impairment was not the "but for" cause of his inability to gain access to the defendant's drive-thru. *Id*. 5–6.

True, these decisions are non-binding and applied Seventh Circuit law. But, there, as here, the courts were presented with an issue of first impression and grappled with the same issue: whether or not a drive-thru-only policy discriminates against the blind in contravention of the ADA. And, in the absence of direct authority on point, they ultimately construed the language of the ADA and applied tests elucidated by the Supreme Court to find that the plaintiffs' ADA claims failed. As such, this order finds their reasoning persuasive.

In sum, plaintiffs have failed to state a claim under the ADA.

## CONCLUSION

For the foregoing reasons, plaintiffs have failed to state a claim under the ADA. Similarly, plaintiffs' claims under the Unruh Act and for declaratory relief also fail because they are based on their ADA claims. Accordingly, this order **GRANTS** defendants' motion to dismiss. Leave to amend would be futile. No further amendments will be allowed.

**IT IS SO ORDERED.**

7

Dated: September 30, 2020.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE