IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT MAGEE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 16-cv-05652 |
| v. | Judge John F. Kness |
| MCDONALD'S USA, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scott Magee sued McDonald's USA, LLC ("McDonald's USA") after various McDonald's USA franchises refused to serve him as a pedestrian in the drive-through lane. Magee is legally blind and cannot drive a car in the McDonald's drive-through lane. Certain McDonald's USA franchises, however, only serve food late at night via the drive-through lane (or through an online application using a third-party delivery service), meaning that Magee cannot order McDonald's food late at night from those restaurants. In this lawsuit, Magee alleges that, by excluding disabled nondriving persons like himself from late-night food service, McDonald's USA has violated the Americans with Disabilities Act. In response, McDonald's USA argues in a motion for summary judgment that it does not "operate" its franchised restaurants within the meaning of the ADA.

As explained below, the Court agrees, based on persuasive precedent and the documents that govern the relationship between McDonald's USA and its franchisees, that McDonald's USA does not "operate" franchised restaurants within the meaning of the ADA. Whether to offer late-night food service (and the way any

such service is offered) is committed to the discretion of the franchised restaurants, not McDonald's USA. In any event, even if McDonald's USA is an appropriate defendant, Magee cannot show that any discrimination against pedestrians (the rule applies to all foot-borne customers) was based on Magee's disability. Because there is no genuine issue of material fact, and because McDonald's USA is entitled to judgment as a matter of law, the motion for summary judgment of McDonald's USA is granted.

## I. FACTUAL BACKGROUND

Plaintiff Scott Magee is an individual from Metairie, Louisiana.[1] (Dkt. 196, Defendant's Statement of Facts ("DSOF") ¶ 1.) Magee suffers from macular degeneration, which causes vision impairment. (DSOF ¶ 2; Dkt. 253, Plaintiff's Statement of Facts ("PSOF") ¶ 1.) Magee's vision disability precludes him from operating a motor vehicle. (PSOF ¶ 2.) Defendant McDonald's USA is a subsidiary of McDonald's Corporation. (DSOF ¶ 3.) McDonald's USA is the franchisor and landlord for the three McDonald's-branded restaurants—located respectively in Metairie, Louisiana; San Francisco, California; and Oakland, California—that refused to serve pedestrian Magee in the drive-through lane. (DSOF ¶ 3.)

As with many other McDonald's USA restaurants, the three restaurants at issue close their dining lobbies during late-night hours and offer only drive-through

---

[1] At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). An allegation from a complaint, however, is not evidence by itself. *Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017). Paragraphs 27 through 34 of Magee's Statement of Additional Facts (Dkt. 251) cite nothing but the complaint and cannot be considered "facts" in opposition to a motion for summary judgment. But in view of the grant of summary judgment, Defendant's Motion to Strike Plaintiff's Amended Statement of Additional Facts (Dkt. 257) is dismissed as moot.

service. (DSOF ¶ 13, 15–16.) Late-night patrons of those restaurants have two options to obtain McDonald's-branded food: (1) by ordering from a motorized vehicle in the restaurant's drive-through; or (2) via third-party delivery service Uber Eats. (DSOF ¶¶ 21–22.)

Magee tried to walk through the drive-through lane during those restaurants' late-night hours. (PSOF ¶¶ 10, 25; DSOF ¶ 43.) Each restaurant denied Magee service. (PSOF ¶¶ 10, 25; DSOF ¶ 46–47.) The Metairie restaurant denied Magee service as a pedestrian in the drive-through on "numerous" occasions. (PSOF ¶ 7.) Magee's visits to the California restaurants were part of a lawyer-planned "test" of other McDonald's USA restaurants to strengthen Magee's case. (DSOF ¶¶ 31–36; PSOF ¶ 20.)

Magee's attorneys gave him a list of California-based McDonald's USA restaurants to visit. (DSOF ¶ 37.) Those attorneys suggested, planned, and paid for Magee's California trip. (DSOF ¶¶ 31–36.) Magee visited many of the restaurants on the attorney-provided list during the late-night hours. (DSOF ¶ 39; PSOF ¶ 22.) Magee's friend drove to the restaurants and parked in the lot. (DSOF ¶ 43.) Magee then attempted to order food from the drive-through lane as a pedestrian. (*Id.*) But both the San Francisco and Oakland restaurants refused to serve Magee as a pedestrian. (*Id.* ¶ 46–47; PSOF ¶ 25.) Magee never attempted to order food from the drive-through as a passenger in a motorized vehicle. (DSOF ¶ 48.)

Magee sued McDonald's USA under the ADA and California Unruh Act, challenging the legality of exclusive service through the drive-through lanes. Magee did not allege direct discriminatory conduct by McDonald's USA as the franchisor of

3

the three restaurants. Instead, Magee maintains that the relationship of McDonald's USA to the restaurants makes McDonald's USA responsible for the franchises' compliance with the ADA.

Both parties agree that the Franchise Agreement and the Lease Agreement between McDonald's USA and the franchisees are the controlling documents in this case. (*See*, *e.g.*, PSOF ¶ 35.) Indeed, each franchisee operates under an identical version of the Franchise Agreement. (*Id.* ¶ 36.) McDonald's USA also provides an Operations and Training Manual to each of its franchisees that is incorporated by reference into the Franchise Agreement. (*Id.* ¶¶ 54, 56–58.) Neither the Franchise Agreement nor the Operations and Training Manual includes mandatory policies for serving restaurant patrons during the late-night hours, and both documents are similarly silent concerning which parts of the restaurant must remain open during late-night hours. (DSOF ¶¶ 13, 15–16.) Restaurants are thus authorized to decide whether to allow pedestrians to use the drive-through lane. (DSOF ¶¶ 13, 15–16; DSOF ¶ 17.)

## II. PROCEDURAL HISTORY

McDonald's USA previously moved to dismiss all three claims (Dkt. 19), which the Court, by the previously-assigned Judge Joan B. Gottschall, granted in part and denied in part. (Dkt. 33.) Judge Gottschall first found that Magee had standing to sue the Metairie restaurant under the ADA. (*Id.* at 10.) Judge Gottschall also found that Magee had standing under the Unruh Act for the California McDonald's USA locations. (*Id.*) McDonald's USA and then-Defendant McDonald's Corporation (a separate entity) later moved for summary judgment. (Dkt. 136.) Judge Gottschall

4

granted summary judgment to McDonald's Corporation but denied summary judgment to McDonald's USA because, as Judge Gottschall explained, both Magee and McDonald's USA violated Local Rule 56.1 "numerous" times and "frustrate[d]" the court's ability to decide the motion correctly. (Dkt. 188 at 12, 14.) Judge Gottschall granted the parties the opportunity to re-brief the motion for summary judgment and file proper Local Rule 56.1 statements. (*Id.*) McDonald's USA amended and renewed its motion for summary judgment; that motion is now before the Court. (Dkt. 192.)

### III. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 378.

Title III of the ADA prohibits discrimination "on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. A restaurant, bar, or other establishment serving food or drink is considered a public accommodation under the statute. *Id.* § 12181(7)(B). A public accommodation violates

5

the ADA if it fails "to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Id.* § 12182(b)(2)(A)(iii).

## IV.   DISCUSSION

### A.   McDonald's USA Does Not "Operate" Franchised Restaurants Under the ADA.

McDonald's USA argues summary judgment is warranted because it is not an operator of its franchised restaurants within the meaning of Title III of the ADA. (Dkt. 211 at 8–11.) McDonald's USA contends that none of the documents governing its franchise relationship give it authority or control to improve accessibility to the disabled. *Id.* Indeed, the purpose of the franchise relationship, according to the Franchise Agreement, is to grant the Franchisee the rights necessary to operate the restaurant. Magee argues the Franchise Agreement, Operations and Training Manual, and Lease between McDonald's USA and its franchised restaurants unquestionably exerts the necessary control over the franchised restaurants to make McDonald's USA an operator within the meaning of the ADA.

Other judges in this District have explained that the word "operates" means an entity that performs effectively the "whole function" of operating a business. *See Huzar v. Groupon, Inc.*, 2018 WL 3619388, at *3 (N.D. Ill. July 30, 2018) (Chang, J.). In *Huzar*, the wheelchair-bound plaintiff sued Groupon—rather than event venues available *through* Groupon—for failing to provide wheelchair-accessible options when booking certain hotels or purchasing certain event tickets. *Id.* at *1. Judge Chang first explained that the ADA applied to both event venues as public accommodations,

*id.* at *2, and that Title III covers not just owners or lessors of public accommodations, but also anyone who "operates" a public accommodation. *Id.* (citing 42 U.S.C. § 12182(a)). Relying on plain meaning, dictionary analysis, and analogous Seventh Circuit precedent, however, Judge Chang held that entities that perform some, but not all (or even most), of the functions of running hotels or concert venues could not be "operator[s]" of those venues under Title III. *Id.* at *3 (citing *Village of Bedford Park v. Expedia*, 876 F.3d 296, 299–305 (7th Cir. 2017)).

Going farther than *Huzar*, other courts have adopted even narrower constructions of Title III's "operate" by requiring that, for the "operator" label to apply to a franchisor, the franchise agreement must specifically reflect the franchisor's right to direct the franchisee to make an accessibility-related change. *See, e.g.*, *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995); *Sullivan v. Doctor's Assocs. LLC*, 2020 WL 353752, at *5−*7 (S.D.N.Y. Jan. 17, 2020) (dismissing a similar ADA claim against a Subway restaurant franchisor because the franchisor was not a Title III "operator").

McDonald's USA's relationship with its McDonald's-branded restaurants is governed by a franchise agreement that imposes requirements on franchisees but does not reserve the franchisor's right to improve restaurant accessibility. Under the Franchise Agreement, franchisees are bound to certain *mandatory* policies and procedures. For example, the Franchise Agreement requires that a "Franchisee shall . . . at Franchisee's own expense, comply with all federal, state, and local laws, ordinances and regulations affecting the operation of the restaurant." (DSOF ¶ 51.)

7

But the Franchise Agreement does not include any provisions addressing policies for late-night service at franchisee restaurants.

In contrast, the Operations and Training Manual provides both mandatory and suggested procedures for the franchisees to implement. (*See*, *e.g.*, *id.* ¶¶ 64–66.) The manual includes an explicitly permissive chapter on procedures for keeping a restaurant lobby open or closed during late-night hours. (*Id.* ¶¶ 64–65.) That chapter allows the franchisee to establish its own policies, and it allows the franchisee to choose the information that will be helpful to it in operating its business. (*Id.* ¶¶ 64–65.) The chapter also notes that "franchisees are independent employers who make their own employment policies and decisions and may choose to use part, all, or none of the contents contained in these materials." (*Id.* ¶ 64.)

Neither the Franchise Agreement nor the Operations and Training manual provide any required late-night service procedures for franchisees. The franchisees independently decide whether they will be open for the late-night hours, how they will be open, and what policies they will implement if they choose to remain open. Some restaurants elect to stay open late at night and offer services via drive-throughs only. (*E.g.*, *id.* ¶¶ 13,15–16.) Others choose to keep their lobbies open and to hire security guards to ensure safety. (*E.g.*, *id.* ¶ 14.) McDonald's USA leaves the late-night operation decision to the franchisees and delegates to the franchisees the responsibility to comply with federal laws. As the court noted in *Sullivan*, this autonomy benefits both the franchisor and the franchisee: the franchisor limits its liability, and the franchisee gets to operate as an independent business. 2020 WL

8

353752, at *5. Consistent with the cases cited above, the Court holds that McDonald's USA is not an operator under Title III of the ADA.

## B. McDonald's USA Did Not Discriminate Against Magee.

McDonald's USA also contends summary judgment is appropriate because the undisputed material facts show that it did not discriminate against Magee on the basis of his disability. Under Title III, the "on the basis" standard requires a plaintiff to prove that, " 'but for' [the plaintiff's] disability, he would have been able to access the services or benefits desired." *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018).

In support of their respective positions, the parties rely upon two separate district court rulings that address the "but for" causation test under factual circumstances similar to those present in this case. Magee cites *Morey v. McDonald's*, in which the court denied a defendant's motion to dismiss because the plaintiff adequately stated a claim under Title III. 2018 WL 11212379, at *4 (N.D. Ill. Nov. 26, 2018).[2] In *Morey*, the analysis turned on whether the blind plaintiff could access the drive-through like any other sighted person. *Id.* At that early stage of the case, the court found that the plaintiff stated a plausible claim and denied the defendant's motion to dismiss. *Id.*[3]

---

[2] The Court later granted summary judgment to defendant, finding that the plaintiff lacked standing. *Morey v. McDonald's*, No. 18-CV-1137, 2020 WL 2542161, at *4 (N.D. Ill. May 19, 2020).

[3] One potential accommodation that Morey sought included "paying a third-party delivery service to deliver food for her house." *Morey*, 2020 WL 2542161, at *2. McDonald's USA now allows ordering via third-party delivery service. (Dkt. 227 at 21.)

In turn, McDonald's USA cites to *Davis v. Wendy's International, LLC,* in which the court found that the plaintiff's expansive view of the "but for" test would, if accepted, lead to "absurd [and] unintended economic consequences." 2019 WL 6769689, at *5 n.2 (N.D. Ill. Dec. 12, 2019). In *Davis*, the court compared a sighted pedestrian attempting to order food through the McDonald's USA drive-through with a blind pedestrian attempting to do the same. *Id.* That comparison, according to the court, demonstrated a *lack* of discrimination: "[i]t is not Davis's disability that precludes her from obtaining food from Wendy's, but her status as a pedestrian." *Id.* Based on that finding, the court granted the defendant's motion to dismiss. *Id.*

In the Court's view, *Davis* is more relevant and persuasive. McDonald's USA's policy to deny pedestrians service in the drive-through affects all patrons of the restaurant—regardless of disability. Magee's disability is not what prevents him from purchasing McDonald's food during the late-night hours; it is instead his status as a pedestrian that limits his access.

In the end, the challenged policies prohibit both sighted and blind pedestrians from walking up and placing an order at drive-through lanes intended for customers in motor vehicles. If there is any discrimination inherent in these policies, the bias is in favor of customers in motor vehicles and against all manner of perambulating gourmands. Because Magee has failed to show that, but for his disability, he would have been permitted to walk up and order food via the drive-through, the Court holds that McDonald's USA is entitled to summary judgment on this basis.

### C. The Remaining Issues are Moot.

McDonald's USA separately contends that it is entitled to summary judgment on the ADA claim because Magee's proposed accommodations are unreasonable as a matter of law. (Dkt. 211 at 21–26.) McDonald's USA also argues that Magee's Unruh Act claim fails, in part, because Magee's harm, if any, was self-inflicted. (*Id.* at 26.)

In view of the Court's holding that McDonald's USA is entitled to summary judgment for other reasons, the Court need not address whether Magee's proposed accommodations are reasonable. Magee's Unruh Act claim, which is predicated on the ADA claim, *see Morey*, 2020 WL 2542161, at *4; Cal. Civ. Code § 51(f); *Lentini v. Cal. Ctr. For the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004) ("the same standards for liability apply under both [the Unruh Act and the ADA]"), likewise fails for want of a viable ADA claim. Accordingly, the Court need not determine whether Magee's asserted harm was self-inflicted under California law.

## V. CONCLUSION

There is no genuine issue as to any material fact between the parties. Because Magee cannot, as a matter of law, establish that McDonald's USA violated Title III of the ADA, the motion for summary judgment of McDonald's USA is granted.

SO ORDERED in No. 16-cv-05652.

Date: October 5, 2021

JOHN F. KNESS
United States District Judge